LAKELAND NURSING HOME, Petitioner-Respondent,

v.

DIVISION OF NURSING HOME FORFEITURE APPEALS,
Respondent-Appellant.

Supreme Court

*No. 83–193. Submitted on briefs April 26, 1984.—
Decided May 30, 1984.*

(Also reported in 348 N.W.2d 523.)

For the respondent-appellant the cause was submitted on the briefs of *Gerald S. Wilcox*, assistant attorney general, with whom on the briefs was *Bronson C. La Follette*, attorney general.

For the petitioner-respondent the cause was submitted on the brief of *Russell W. Devitt*, corporation counsel for Walworth county.

SHIRLEY S. ABRAHAMSON, J. This appeal, certified by the court of appeals, is from a judgment and order of the circuit court for Walworth county, John J. Byrnes, Circuit Judge, setting aside a decision of the Division of Nursing Home Forfeiture Appeals (Division) affirming the Wisconsin Department of Health and Social Services' assessment of a $500 forfeiture against Lakeland Nursing Home (Lakeland), for a violation of a regulation governing the operation of nursing homes.[1]

Two issues are presented on appeal: First, whether a county-operated nursing home that violates a regulation

---

[1] Ch. 50, Stats. 1981–82, empowers the Department of Health and Social Services to license, inspect, and regulate the state's nursing homes. Sec. 50.02(1), 1981–82. "Any operator or owner of a nursing home" which violates subchapter I of the chapter 50 statute or any regulation adopted thereunder may be subject to a forfeiture. Sec. 50.04(5)(a), 1981–82. The Division of Nursing Home Forfeiture Appeals, a unit within the Department of Administration, hears disputes over forfeiture assessments, and judicial review of the Division's decisions may be held. See secs. 15.101(9), 15.103(1), 50.04(5)(e), 1981–82; *Sunnyview Village v. Dept. of Administration*, 104 Wis. 2d 396, 311 N.W.2d 632 (1981).

is subject to a forfeiture under sec. 50.04(5), Stats. 1981–82; second, whether the imposition of a forfeiture of $500 was appropriate in this case under the provisions of sec. 50.04(5)(b), 1981–82. On appeal the parties do not dispute that county-operated nursing homes such as Lakeland are subject to the licensing and regulatory provisions of ch. 50, 1981–82, or that Lakeland violated the regulation in question.

Because we conclude that the statutory forfeiture provisions of sec. 50.04(5) are applicable to a county-operated nursing home and that the Division's decision on the imposition and amount of the forfeiture is based on substantial evidence and a proper exercise of discretion, we reverse the order and judgment of the circuit court and affirm the assessment of the forfeiture against Lakeland.

Lakeland Nursing Home, an institution falling within the definition of nursing home in sec. 50.01(3), Stats. 1981–82, is operated by Walworth county and is licensed by the Wisconsin Department of Health and Social Services (the Department).

On April 24, 1979, following an investigation into a complaint that a nurse's aide at Lakeland attempted to force-feed an elderly diabetic patient, the Department cited Lakeland for violating sec. H 32.10(1)(g), Wis. Adm. Code, which provides that "[p]atients shall receive considerate care and treatment at all times and shall not be abused in any way." The violation was considered a class B violation under sec. 50.04(4)(b)2,[2]

---

[2] Sec. 50.04(4)(b)2, Stats. 1981–82, provides as follows:

"2. A class "B" violation is a violation of this subchapter or of the rules promulgated thereunder which creates a condition or occurrence relating to the operation and maintenance of a nursing home directly threatening to the health, safety or welfare of a resident."

and a forfeiture of $500 was assessed pursuant to sec. 50.04(5)(a)2.[3]

Lakeland concedes that it is a nursing home under ch. 50 and must comply with the provisions of ch. 50 applicable to nursing homes. It asserts, however, that as a county-operated nursing home it is not subject to the imposition of any forfeiture for violating a provision of ch. 50 or a regulation adopted thereunder. In other words, Lakeland asks that we read into sec. 50.04(5), the forfeiture provisions, an exception for county-operated nursing homes. Sec. 50.04(5) does not expressly include within its coverage or expressly exclude from its coverage a county-operated nursing home.

The question we face is whether the legislature, when it included county-operated nursing homes under ch. 50, intended that they be subject to the forfeiture provisions.

This question of statutory interpretation is a question of law. In resolving this legal issue, the court need not defer to the determination of the administrative agency or the circuit court since these tribunals are in no better position to interpret the statute than this court is.

Lakeland asserts that subjecting county-operated nursing homes to the forfeiture provisions contravenes the legislative intent. Lakeland argues as follows: The legislature's purpose in providing forfeitures was to induce nursing homes to comply with state regulations or suffer profit reduction through forfeiture. Such an inducement would not affect county-operated nursing homes, however, because they have no profits to be reduced. To impose a forfeiture on a county-operated nursing home would defeat, not promote, the legislative purpose of securing compliance with state regulations designed to improve residents' care because payment of a forfeiture

---

[3] Sec. 50.04(5)(a)2, Stats. 1981–82, provides as follows:

"2. A class "B" violation may be subject to a forfeiture of not less than $100 and not more than $1,000 for each violation."

reduces funds available for services to the residents; it does not reduce the profits that are available to the nursing home's owners.

To support its position, Lakeland relies on *Wisconsin Veterans Home v. Division of Nursing Home Forfeiture Appeals*, 104 Wis. 2d 106, 310 N.W.2d 646 (Ct. App. 1981), in which the court of appeals concluded that the legislature had not intended the forfeiture provided in sec. 50.04(5) to apply to the Wisconsin Veterans Home, a state-operated nursing home. The court of appeals decision that one state agency not impose a forfeiture upon another state agency rested on two grounds. First, a state agency would disturb the legislative decision as to allocation of state funds if one state agency paid a forfeiture upon prosecution by another state agency. Second, forfeiture through agency and court procedures is a cumbersome and expensive way to juggle figures in the state's accounting books. Lakeland urges that the considerations underlying the *Veterans Home* no-forfeiture rule as to state-operated nursing homes justify its extension to county-operated nursing homes.

We are not persuaded by Lakeland's arguments. First, we are concerned that adoption of Lakeland's argument might cast doubt as to whether any statutory forfeiture provision should be applied to the county if the county is not expressly mentioned. This construction has not generally been advocated. See, *e.g.*, *State v. City of Green Bay*, 96 Wis. 2d 195, 291 N.W.2d 508 (1980).

Second, the reasoning of the court of appeals in the *Veterans Home* case is inapplicable to this case. While the collection of a forfeiture by one state agency from another coequal state agency may needlessly reallocate the state's budget, collection of a forfeiture by the state from a county agency has a different effect. By shifting county revenue to the state, the forfeiture does not merely juggle the county's accounts but penalizes the

taxpayers of the county and may thus encourage remedial action by the citizens or officials. The legislature might well have concluded that a forfeiture would induce a county-operated nursing home to comply with state regulations. Whether or not the home operates at a profit, loss of operating revenues may very well provide a substantial incentive to a county government to comply with state laws.

Finally, it appears that imposing a forfeiture on county-operated nursing homes comports with the legislative intent of creating a system of increasingly severe sanctions for increasingly dangerous violations. The legislature viewed forfeitures as a practical, useful enforcement tool. But if Lakeland's position were accepted, the state's mechanisms for enforcing its regulations against county-operated nursing homes might be limited to more drastic measures, such as suspending, revoking, or refusing to renew a license. This result is contrary to the legislative intent in enacting the forfeiture provisions in 1977.

The legislature sought to create an effective enforcement system that would encourage compliance, encourage the settlement of enforcement actions outside the court system, and provide a range of sanctions for a range of violations. One of the major problems encumbering enforcement of nursing home regulations which the 1977 law was designed to cure was "inflexible enforcement procedures." License revocation, the primary measure of enforcement, was far too disruptive a sanction except in the most extreme circumstances. In 1977 the legislature sought "to present a broad range of sanctions corresponding to the range of violations which exist. This [would] mean . . . that enforcement action w[ould] not necessarily disrupt continuity of care." Introductory comment to Senate Bill 227, Legislative drafting file for chapter 170, Laws of 1977, Legislative Refer-

ence Bureau, Madison, Wis. The legislature expressed its intent as follows:

"The intent of this legislation is to establish fair and effective methods for enforcement action regarding facilities licensed under chapter 50 of the statutes. It is further intended that this legislation be used to encourage compliance with rules and provide full opportunity to settle enforcement actions outside of the court system. It is intended that the use of strong sanctions will bring compliance in the case of homes which are in serious or chronic violation of state regulations.... ." Sec. 1, ch. 170, Laws of 1977.

We conclude that if we were to adopt Lakeland's construction of the statute, the state's ability to enforce its regulatory scheme to protect residents of nursing homes would be unnecessarily hampered. Like any number of private entities in this state, a county may own and operate a nursing home. The private and public entities provide the same basic services. The forfeiture assessment procedure ensures compliance by every nursing home in the state with the standards set by the appropriate state agency. Absent either an express legislative declaration that county-operated nursing homes are exempt from forfeitures, or a sound rationale that such an exemption would further legislative policy, we decline to read the statute as Lakeland urges.

The second issue in this case relates to the Department's assessment of a $500 forfeiture and the Division's affirmance of the forfeiture. Lakeland was found to have committed a class B violation. The statutory range of forfeitures for a class B violation is not less than $100 and not more than $1,000 for each violation, sec. 50.04(5)(a)2, Stats. 1981–82. The legislature has set forth four factors for the Division to consider in determining whether a forfeiture is to be imposed and, if so,

the amount: (1) gravity of the violation; (2) good faith of the licensee; (3) previous violations; (4) financial benefit to the nursing home of committing or continuing the violation. Sec. 50.04(5)(b), 1981–82.[4] Proceedings before the Division to impose and fix the amount of forfeitures are governed by ch. 227, 1981–82. The Division's decision as to the imposition and amount of forfeiture is the final administrative decision and is subject to judicial review. Sec. 50.04(4)(e)(5)(e), 1981–82.

The scope of review of the Division's decision is governed by secs. 227.20, Stats. 1981–82. To the extent that the agency's action depends on any fact found by the agency, the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact. The court shall set aside agency action based on a finding of fact if the finding is not supported by substantial evidence in the record. The court shall not substitute its judgment for

---

[4] Sec 50.04(5)(b), Stats. 1981–82, provides as follows:

"(b) *Factors in assessment of forfeitures.* In determining whether a forfeiture is to be imposed and in fixing the amount of the forfeiture to be imposed, if any, for a violation, the following factors shall be considered:

"1. The gravity of the violation, including the probability that death or serious physical or psychological harm to a resident will result or has resulted; the severity of the actual or potential harm; and the extent to which the provisions of the applicable statutes or regulations were violated.

"2. 'Good faith' exercised by the licensee. Indications of good faith include, but are not limited to, awareness of the applicable statutes and regulation and reasonable diligence in complying with such requirements, prior accomplishments manifesting the licensee's desire to comply with the requirements, efforts to correct and any other mitigating factors in favor of the licensee.

"3. Any previous violations committed by the licensee.

"4. The financial benefit to the nursing home of committing or continuing the violation."

that of an agency on an issue of discretion. On review, the court shall accord due weight to the experience, technical competence, and specialized knowledge of the agency, as well as discretionary authority conferred upon it. Sec. 227.20 (6) (8) (10), 1981–82.

We have reviewed the record. The agency's findings of facts relating to the abusive feeding, the possible harm to the resident, and prior complaints against the aide and Lakeland were supported by substantial evidence in the record.

The statutes grant the Division discretion to impose and fix the amount of the forfeiture within the range of monetary sums established by the legislature. The imposition of a $500 forfeiture is within the range established by statute.

The exercise of discretion in imposing and fixing a forfeiture is not the equivalent of unfettered decision-making. The term "discretion" contemplates a process of reasoning which depends on facts that are in the record or are reasonably derived by inference from the record and yields a conclusion based on logic and founded on proper legal standards.

In its written decision, the Division made findings of fact and explained the exercise of its discretion. It reviewed and analyzed the facts and each of the four factors mandated by the statute, basing its affirmance of the $500 assessment on the gravity of the violation, Lakeland's good faith or lack thereof in failing to prevent the violation despite knowledge of prior incidents, and Lakeland's history of prior violations. It considered the fourth statutory factor, financial benefit, and concluded that this factor was not applicable since Lakeland gained no financial benefit from abusive feeding techniques. Lakeland does not assert that in this case the imposition of the forfeiture or the amount is incon-

sistent with an agency rule or practice or an officially stated agency policy. Sec. 227.20(8), Stats. 1981–82.

The function of this court is not to exercise discretion in the first instance but to review the exercise of discretion by the Division. The legislature has mandated that the court give due weight to the discretionary authority conferred on the agency and that the court not substitute its judgment for that of the Division. Sec. 227.20(8) (10). We conclude that the Division's decision to impose a $500 forfeiture reflects the Division's reasoned application of the appropriate legal standard to the relevant facts in the case. Accordingly we hold that the Division properly exercised its discretion and that there is no basis for reversing the decision of the Division.

For the reasons set forth above, we reverse the order and judgment of the circuit court and remand the cause to the circuit court to affirm the decision of the Division of Nursing Home Forfeiture Appeals assessing a $500 forfeiture against Lakeland Nursing Home.

*By the Court.*—Order and judgment of the circuit court reversed and cause remanded.